UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC., and BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS HMO BLUE, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>REGENERON PHARMACEUTICALS, INC.,<br><br>Defendant. | Civil Action No.<br>21-12094-FDS |

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO TRANSFER, STAY, OR DISMISS

**SAYLOR, C.J.**

This is an action alleging a kickback scheme arising out of a pharmaceutical company's donations to a charity. Plaintiffs Blue Cross and Blue Shield of Massachusetts, Inc., and Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc., have sued defendant Regeneron Pharmaceuticals, Inc., alleging that Regeneron used an illegal kickback scheme to boost sales of Eylea, its signature eye-disease drug. Plaintiffs assert claims under 18 U.S.C. § 1962 and Mass. Gen. Laws ch. 93A, § 9. Plaintiffs also contend that Regeneron's actions amount to fraudulent concealment, fraud, tortious interference with contract, and unjust enrichment.[1]

Regeneron has moved to transfer, stay, or dismiss the complaint. It asks that the Court

---

[1] In two separate actions, Horizon Healthcare Services and Medical Mutual of Ohio have made essentially identical allegations against Regeneron. (*See* Compl. ¶¶ 5-12, *Horizon Healthcare Servs., Inc. v. Regeneron Pharm., Inc.*, No. 1:22-cv-10493-FDS (D. Mass. Apr. 4, 2022); Compl. ¶¶ 5-12, *Medical Mut. of Ohio v. Regeneron Pharm., Inc.*, No. 1:22-cv-10302-FDS (D. Mass. Feb. 23, 2022).

either transfer the case to the Southern District of New York or stay the case pending resolution of a Department of Justice civil action against Regeneron in this court. In addition, Regeneron has moved to dismiss the complaint on two grounds: that the claims are time-barred and for failure to plead fraud with particularity under Fed. R. Civ P. 9(b).

For the following reasons, the motion to transfer will be denied and the motion to stay will be granted. The motion to dismiss will remain pending during the period the stay is in force.

**I.     Background**

    **A.     Factual Background**

Unless otherwise noted, the facts are stated as set forth in the complaint.

Blue Cross and Blue Shield of Massachusetts, Inc., and Blue Cross and Blue Shield of Massachusetts HMO Blue., Inc., (collectively, "Blue Cross") are health-insurance companies headquartered in Boston, Massachusetts. (Compl. ¶ 1). Among other services, Blue Cross, through contracts with the Centers for Medicare and Medicaid Services, provides Medicare benefits to Medicare Part C and Medicare Part D recipients. (*Id.* ¶ 2). Blue Cross also provides private commercial health-plan benefits. (*Id.*). Blue Cross covers prescription-drug costs under both Medicare and private health plans. (*Id.*).

Regeneron Pharmaceuticals, Inc., is a pharmaceutical company based in Tarrytown, New York. (*Id.* ¶ 4).

Regeneron sells Eylea, a treatment for wet age-related macular degeneration, an eye disease. (*Id.* ¶ 12). In 2020, Eylea sales generated $4.9 billion for Regeneron, more than half of its sales revenue for that year. (*Id.* ¶ 113).

According to the complaint, Regeneron used the Chronic Disease Foundation ("CDF") to boost sales of Eylea, making it the dominant treatment for wet age-related macular degeneration. CDF is a charity headquartered in Texas that relies on donations from drug manufacturers to

assist patients with their cost-sharing obligations for drugs, including Eylea. (Def. Mem. at 13; Compl. ¶ 64). The complaint alleges that from 2013 to 2020, Regeneron coordinated its donations with CDF by contributing exactly enough money to cover CDF's Eylea co-pay assistance, with no funds left over to pay for any other drug. (Compl. ¶¶ 77, 84). This alleged kickback scheme allowed Regeneron to directly subsidize Eylea treatments, encouraging patients to pick Eylea over competing products such as Lucentis and Avastin. (*Id.* ¶¶ 82-83). CDF profited from this arrangement by taking a portion of Regeneron's funding as a fee. (*Id.* ¶ 85).

According to the complaint, Regeneron enlisted the Lash Group to advertise the CDF co-pay assistance program. The Lash Group is a pharmaceutical-industry consulting firm headquartered in South Carolina. (*Id.* ¶ 93; Def. Mem. at 13). Lash created an advertising program that referred physicians to CDF, assuring physicians that patients to whom they prescribed Eylea would receive co-pay assistance through CDF. (Compl. ¶¶ 98-100). Lash's advertisements represented that CDF was an independent charity. (*Id.* ¶ 96).

Blue Cross alleges that it has paid more than $100 million to cover the cost of providing Eylea to patients. (*Id.* ¶ 115). According to the complaint, its contract with CMS to provide Medicare benefits requires it to comply with 42 U.S.C. § 1320a-7b, the federal anti-kickback statute. (*Id.* ¶ 92). It contends that the scheme violated the anti-kickback statute by causing healthcare providers to submit Eylea treatment claims that were ultimately subsidized by a drug manufacturer. (*Id.* ¶¶ 54-55). In addition, it contends that both its Medicare and private commercial plans contain cost provisions that require patients to pay a portion of drug costs, and that CDF's co-pay assistance violated these contract provisions. (*Id.* ¶ 43).

According to the complaint, the kickback scheme first came to light in 2020, when the Department of Justice filed a civil action against Regeneron in this court. (*Id.* ¶ 57). The DOJ

action is based on the same alleged kickback scheme. (*See* Am. Compl. ¶¶ 1-5, *United States v. Regeneron Pharm., Inc.*, No. 1:20-cv-11217-FDS (D. Mass. Aug. 24, 2021)). As in this case, the complaint in the DOJ action alleges that Regeneron violated the anti-kickback statute. (*Id.* ¶¶ 91-96). The DOJ action is currently in the discovery stage.

Four other similar civil actions based on Regeneron's alleged kickback scheme are pending in the federal courts. Two actions in the Southern District of New York have been stayed pending resolution of the DOJ action. *See UnitedHealthcare Ins. Co. v. Regeneron Pharm.*, 2021 WL 6137097, at *1 (S.D.N.Y. Dec. 29, 2021). The other two actions are before this court, and Regeneron has filed essentially identical motions to transfer, stay, or dismiss in both. (*See* Def. Mem. at 1, *Horizon Healthcare Servs., Inc. v. Regeneron Pharm., Inc.*, No. 1:22-cv-10493-FDS (D. Mass. June 13, 2022); Def. Mem. at 1, *Medical Mut. of Ohio v. Regeneron Pharm., Inc.*, No. 1:22-cv-10302-FDS (D. Mass. May 31, 2022)).

### B. Procedural Background

On December 20, 2021, Blue Cross filed this action against Regeneron. The complaint asserts six claims: violation of 18 U.S.C. § 1962; conspiracy to violate 18 U.S.C. § 1962; violation of Mass. Gen. Laws ch. 93A, § 9; fraudulent concealment and fraud; tortious interference with contract; and unjust enrichment.

Regeneron has moved to transfer this case to the Southern District of New York under 28 U.S.C. § 1404(a), and has also moved to stay the action pending resolution of the DOJ action. In addition, it has moved to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b).

## II. Motion for Transfer of Venue

### A. Legal Standard

Regeneron seeks transfer of venue to the Southern District of New York pursuant to 28

U.S.C. § 1404(a).  That statute provides as follows:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Section 1404(a) codifies in part the doctrine of *forum non conveniens*.  *Albion v. YMCA Camp Letts*, 171 F.3d 1, 2 (1st Cir. 1999). The decision of whether to transfer a case rests with the sound discretion of the court.  *Filmline (Cross-Country) Prod., Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989).

### 1. Whether the Southern District of New York Is a Proper Venue

Before proceeding to an "individualized, case-by-case consideration of convenience and fairness," the explicit terms of the statute require the initial determination of whether this action could have properly been brought in the proposed transferee court.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted).  Venue clearly would have been appropriate in the Southern District of New York.  Regeneron's offices are in Tarrytown, New York, which is within that jurisdiction.  Regeneron employees at its New York offices allegedly arranged the kickback scheme.  Therefore, this action could have been properly brought in the Southern District of New York.

### 2. Whether the Balance of Convenience and Fairness Weighs in Favor of a Venue Transfer

"The plaintiff's forum choice 'should rarely be disturbed'; thus, 'the moving defendant . . . must establish that the private and public interests weigh heavily on the side of trial in the foreign forum.'"  *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 424 (1st Cir. 1991) (internal quotations and citations omitted).  "The defendants have the burden to establish that, on balance, the interests of justice and convenience weigh heavily in favor of transfer." *Systemation, Inc. v. Engel Indus.*, 992 F. Supp. 58, 64 (D. Mass. 1997) (citations omitted).

Courts in this district ordinarily consider the following factors in determining the most

appropriate forum under § 1404(a):  (1) the relative convenience of the parties, (2) the convenience of the witnesses and location of documents, (3) any connection between the forum and the issues, (4) the law to be applied, and (5) the state or public interests at stake.  *Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 17 (D. Mass. 2002).

### a. Relative Convenience of Parties

Massachusetts is undoubtedly a more convenient forum for Blue Cross, which is headquartered in Boston.  Regeneron's offices are located about thirty miles north of New York City, but "it is not a hardship to travel from New York to Boston in order to appear for a civil trial."  *Veryfine Products, Inc. v. Phlo Corp.*, 124 F. Supp. 2d 16, 26 (D. Mass. 2000).  Regeneron has litigated three other actions in the District of Massachusetts, including an action brought by the Department of Justice.  This factor weighs against transfer.

### b. Convenience of Witnesses and Location of Documents

The convenience of expected witnesses is "probably the most important factor, and the factor most frequently mentioned."  *Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D. Mass. 1991) (citations omitted).  Courts must look at "the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify."  *Id.*

In analyzing this factor, the court is ordinarily concerned with the location of witnesses who are not parties or employees of the parties.  *See* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3851 ("[T]he convenience of witnesses who are employees of a party is given less weight by the court because that party can obtain their presence at trial.") (citing cases); *Sigros v. Walt Disney World Co.*, 129 F. Supp. 2d 56, 71 (D. Mass. 2001) ("If, however, a court order or the persuasion of an employer who is a party to the action can secure the appearance of witnesses regardless of the location of forum, that factor

6

diminishes in importance.").

Regeneron has identified several non-party witnesses named in the complaint for whom appearing in the Southern District of New York would be more convenient than Massachusetts. These four non-party witnesses (William Daniels, Robert Davis, Robert Krukowski, and Robert Terifay) are all former Regeneron employees presently working in New York and New Jersey. In response, Blue Cross has not identified any non-party witnesses who would be inconvenienced more by litigation in New York than in Massachusetts, or any non-party witnesses who could be compelled to testify in Massachusetts but not New York. Neither party contends that witnesses from CDF and the Lash Group, which are headquartered in Texas and South Carolina, respectively, will be inconvenienced any more or less by litigation in New York than in Massachusetts.

Blue Cross contends that many relevant documents are located in Massachusetts. Blue Cross's own documents are located in Massachusetts. Regeneron documents that have been produced by the DOJ action are also located in Massachusetts.

At present, this factor appears to be neutral, or somewhat weighs against transfer.

### c.     Connection between the Forum and the Issues

Massachusetts has a strong connection to this action. Blue Cross's alleged damages stem from charges to its health-insurance plans. Because Blue Cross is headquartered in Massachusetts, those injuries occurred in Massachusetts. New York also has a strong connection to this action. Regeneron is headquartered in New York, and Regeneron's New York employees orchestrated the alleged kickback scheme. Nonetheless, this factor weighs against transfer.

### d.     The Law to be Applied

Blue Cross has brought federal and state statutory claims. Federal law is of course the same throughout the United States, and this court has more experience applying Massachusetts

statutory law. Although the issue has not been briefed, it is possible that New York law will apply to Blue Cross Blue Shield's fraud, tortious interference with contract, and unjust enrichment claims. The court is of course capable of applying the common law of another state. *See, e.g.*, *Hipage Co. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 613 (E.D. Va. 2008) ("Even assuming that Virginia law would apply to the action in Illinois, the U.S. District Court for the Central District of Illinois is competent to apply Virginia law."); *cf. Atlas Oil Co. v. Micro-Design, Inc.*, 2009 WL 411763, at *5 (E.D. Mich. Feb. 17, 2009) ("Courts usually do not consider the application of foreign law to be an important factor in a § 1404 transfer analysis."). This factor weighs against transfer.

### e. Public Interests at Stake

Public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 n.6 (2013) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). Because the parties have not identified any meaningful public interest at stake here that would be better protected in one forum than another, this factor is neutral.

In sum, venue is proper in Massachusetts and transfer to the Southern District of New York is not appropriate.

### III. Motion to Stay

#### A. Legal Standard

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition and causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). "[A] typical

8

reason" to stay a case "is the pendency of a related proceeding in another tribunal." *Hewlett-Packard Co., Inc., v. Berg*, 61 F.3d 101, 105 (1st Cir 1995). When a common issue exists across two "overlapping" suits, courts may stay one case to avoid "duplication of effort and potentially inconsistent judgments." *Acton Corp. v. Borden*, 670 F.2d 377, 382 (1st Cir. 1982) (Breyer, J.). Courts must also "weigh the competing interests" of the parties and "the court's interest in efficient procedures." *Taunton Gardens Co. v. Hills*, 557 F.2d 877 (1st Cir. 1977).

### B.     Analysis

Blue Cross contends that a stay would undermine its health plans' cost-sharing provisions, harming its ability to provide affordable healthcare. Rather than "waiting in limbo," it "seek[s] redress now." (Opp. at 8). However, this action is in its earliest stages; neither party has expended resources and attention on discovery. By contrast, the DOJ action against Regeneron is well underway. The DOJ action will likely resolve whether Regeneron's actions violate federal law substantially faster than this action.

Regeneron contends that failure to grant a stay would "impose substantial and unnecessary costs" and risk "inconsistent judgments." (Def. Mot. at 15). It is unclear how costs of litigation would be materially increased if the stay is not granted. It is true, however, that a stay might well reduce costs to the extent that the parties could make use of discovery exchanged in the DOJ matter. Risk of inconsistent judgments is also a genuine concern. Without a stay, Regeneron will face multiple private civil actions and a government civil enforcement action at the same time, based on the same basic set of facts, which conceivably could lead to inconsistent outcomes.

Finally, both parties contend that failure to adopt their position on the motion to stay will impose a burden on this court. Regeneron contends that proceeding with the case will impose "substantial and unnecessary costs" on the court, as Blue Cross revisits issues covered by the

DOJ action. (*Id.* at 15–16). Blue Cross contends that the court can "coordinate the two cases to avoid any wasted efforts or unnecessary duplication." (Opp. at 7).

As noted, the DOJ action is substantially farther along than this action and is likely to be resolved more quickly. While the DOJ action is a False Claims Act suit, unlike this action, the underlying factual dispute is essentially the same: whether Regeneron, CDF, and Lash worked together to boost Eylea unlawfully. There is no need for a "headlong race" to resolve "substantially the same issues" under contention in the DOJ action. *New Balance Athletic Shoe, Inc. v. Converse, Inc.*, 86 F. Supp. 3d 35, 37 (D. Mass. 2015) (granting a stay in a trademark infringement case pending resolution of an earlier-filed action at the United States International Trade Commission). If the DOJ action vindicates Blue Cross's position that Regeneron engaged in an illegal kickback scheme, this action will likely proceed more quickly. Staying this action will ensure "efficient procedure[ ]" by allowing the DOJ action to establish factual issues central to this action. *Taunton*, 557 F.2d at 879 (1977).

In *UnitedHealthcare*, Judge Briccetti stayed two civil actions brought in the Southern District of New York by two health-insurance providers against Regeneron alleging the same scheme alleged here. *UnitedHealthcare*, 2021 WL at *1. Judge Briccetti noted that the DOJ action in Massachusetts will resolve whether Regeneron's alleged conduct violated federal law more quickly than the actions by insurers, which he found to be based on the same facts. *Id.* at *3-4. Judge Briccetti also found that a stay would conserve judicial resources and uphold the public interest. *Id.* at *5. Judge Briccetti's analysis appears to be correct. A stay in this case will also complement the stay of the New York actions. A stay of all private civil actions based on the alleged kickback scheme will better permit the DOJ action to proceed without potentially conflicting discovery and judgments than would a stay of only some of those actions.

In sum, a stay while the DOJ action proceeds will conserve resources and avoid duplicative litigation.  The motion to stay will therefore be granted.  The court will issue similar orders in the two related lawsuits.

## IV. <u>Conclusion</u>

For the foregoing reasons, defendant's motion to transfer is DENIED.  Defendant's motion to stay is GRANTED.  This proceeding is hereby STAYED pending further order of the court.

**So Ordered.**

Dated: September 27, 2022

/s/ F. Dennis Saylor, IV
F. Dennis Saylor IV
Chief Judge, United States District Court